[ PHILADELPHIA, FEBRUARY 29TH, 1840. ]

## MORONEY *against* COPELAND.

APPEAL.

By articles of agreement under seal, A. agreed to sell and convey to B. and C. a certain large lot of ground, for the sum of $29,700, payable at the option of B. and C., either in cash, or ground-rents issuing out of the premises, to be secured in the usual manner, and to be reserved in deeds to be executed by A. to such purchasers as might be procured by B. and C., and which ground-rents, when secured by brick buildings, were to be credited towards the purchase-money at a fixed rate. B. and C. covenanted to pay the said sum of $20,700, with lawful interest thereon, or to secure to A. ground-rents to the amount of $1782 per annum ; and that the business of letting on ground-rent, &c., should be brought to a close within four years, and so much of the said sum of $29,700, and interest thereon, as should not then be paid or discharged, should forthwith be paid off ; and A. covenanted to convey in fee simple a good title to the residue of the lot, if any, to B. and C., as soon as they should have paid and secured the purchase-money and interest. B. and C. then covenanted with A., that until the payment of the purchase-money and interest, he should have all the remedies for the recovery of so much of the said annual sum of $1782 as should not have been already secured by reserved ground-rents, as are usual in ground rent deeds in Philadelphia, and as fully as if the covenants therein contained and clause of re-entry were fully and verbatim repeated ; it being expressly covenanted, that in case of failure to fulfil any covenant in the said agreement contained, it should be lawful for A. to 're-enter upon the premises, without any legal proceedings, and the same thenceforth to hold for his own exclusive use. In pursuance of this agreement, B. and C. sold several small lots, and made conveyances on ground-rent. Afterwards a judgment was obtained against C., under which his interest in the large lot was sold by the sheriff, and the proceeds brought into Court: *Held*, 1. That the annual sum stipulated to be paid by B. and C. to A. was to be considered as interest upon the purchase-money, and not in nature of a ground-rent payable out of the proceeds of the sheriff's sale. 2. That the taxes and the assessments for iron pipes, filling, paving and curbing foot ways upon the whole lot, were to be paid in full, and not merely the one-half of C.; but that B. was entitled to be subrogated as to one-half against the interest of C. in the land sold by the sheriff.

THIS was an appeal from a decree of the District Court for the City and County of Philadelphia, in the matter of the distribution of the proceeds of the sale of certain real estate sold by the sheriff, by virtue of an execution in an action in that Court, brought by Moroney, to the use of H. B. Pennock, against Samuel Copeland.

(Moroney *v.* Copeland.)

The real estate sold under the execution in this case was part of a large lot or square of ground, in which the defendant was interested, under certain articles of agreement, under seal, made on the 10th of November, 1835, and duly recorded; which were as follows:

"Articles of agreement made and concluded upon this 10th day of November, in the year of our Lord one thousand eight hundred and thirty-five, between George Pepper, of the city of Philadelphia, brewer, of the one part, and Samuel Brown, of the Northern Liberties, tailor, and Samuel Copeland, of the district of Spring Garden, in Penn township, house carpenter, of the other part, witnesseth, that the said George Pepper hath agreed to sell and convey, and the said Samuel Brown and Samuel Copeland have agreed to purchase, all that certain large lot or square of ground bounding on Wallace street, Washington street, Tenth street and Eleventh street, in the district of Spring Garden, in Penn Township aforesaid, excepting and reserving the two lots of ground on the west of said Tenth street, on which are now erected two brick messuages or tenements, and which are at the distance of seventeen feet northward from said Washington street being each seventeen feet front, and in depth on this south line seventy feet three inches, and on the north line thereof, seventy feet ten inches and a half with the appurtenances; for the sum of twenty-nine thousand seven hundred dollars, lawful money of the United States of America, payable at the option of the said Samuel Brown and Samuel Copeland, either in cash or in ground-rents issuing out of the premises, to be secured in the usual manner, payable half yearly, clear of taxes, and the said rents to be reserved in deeds to be executed by the said George Pepper, or his legal representatives, to such purchasers as may be procured by the said Samuel Brown and Samuel Copeland, and the said rents to be redeemable within eight years from the date of the conveyances, which ground-rents when secured by brick buildings of the size, quality and value hereinafter mentioned and described shall be credited towards the purchase-money payable by the said Samuel Brown and Samuel Copeland, at the rate of sixteen and two-third years purchase. And the said Samuel Brown and Samuel Copeland, for themselves, their heirs, executors, administrators and assigns, hereby covenant, promise and agree, to and with the said George Pepper, his heirs and assigns, to pay him or them the principal sum of twenty-nine thousand seven hundred dollars such as aforesaid, with lawful interest thereon from the first day of October anno domini one thousand eight hundred and thirty-six, in half yearly payments, or to secure to the said George Pepper or his legal representatives, ground-rents to be secured as aforesaid, to the amount of seventeen hundred and eighty-two dollars per annum, payable half yearly, commencing on the said first day of October, Anno Domini 1836. And in case any

(Moroney v. Copeland.)

such rents or payments are made to commence at an earlier date, the said Samuel Brown and Samuel Copeland shall have credit therefor towards the interest or ground-rent thereafter to accrue; and that the whole proceeds of sales, whether for cash or ground-rents aforesaid, shall be paid to the said George Pepper, or his legal representatives, until the full consideration aforesaid shall be fully discharged; and also that at least twelve good and substantial brick houses shall be erected on the said lot of ground within the year one thousand eight hundred and thirty-six; and that all the houses which shall front on the said Tenth and Eleventh streets shall be at least three stories in heighth, to have marble water tables and Ashlers; and not to be inferior in size and quality to the houses erected on the east side of Eighth street between Green and Coates streets. And also, that the houses to be erected on Washington and Wallace streets shall be at least equal in size and quality to the houses built by Haas and Myers on Tenth street between Green and Spring Garden streets. And also that the lots of ground hereby reserved to the said George Pepper, shall have an outlet of the width of four feet into Washington street, at the rear or westernmost end of the said lots, the southernmost line of which is at the distance of seventy feet three inches, and the northernmost line of which is at the distance of seventy feet ten inches and a half west of said Tenth street, or at the option of the said parties of the second part hereto, in case the said parties of the second part hereto shall open a new street, running north and south for the accommodation of their lot of ground, then the lots of the said George Pepper, reserved as aforesaid, shall be extended in depth westward of the whole width of his said lots to such new street, free of expense to the said George Pepper or his legal representatives. And also that the said Samuel Brown and Samuel Copeland shall have the privilege of using the culvert built or made by the said George Pepper; but all expenses attending the opening across Wallace street into the culvert, to be paid and borne by them the said Brown and Copeland exclusively. And also that the business and transaction of letting on ground-rent, for the purpose of paying the said purchase-money, or raising the amount of seventeen hundred and eighty-two dollars per annum of ground-rents, shall be brought to a close within four years from the date hereof; and that so much of the said sum of twenty-nine thousand seven hundred dollars and interest thereon, as shall not at the end of said term of four years, be paid and discharged by reserved ground-rents as aforesaid, or principal money paid, shall then forthwith be paid off and discharged by the said Samuel Brown and Samuel Copeland, or their legal representatives. And it is also expressly covenanted, understood, and agreed, that no slaughter house, skin-dressing establishment, blacksmith shop, glue, soap, candle or starch manufactory, or other buildings for offensive occupation, shall be erected on any part of the said premises. And the said George Pepper, for himself,

(Moroney *v.* Copeland.)

his heirs, executors, administrators and assigns, doth covenant and agree, to and with the said parties of the second part hereto, and their legal representatives, to convey in fee simple, a good and clear title to all the residue of the premises aforesaid, if any there shall be, after sales made to secure the ground-rents in principal money aforesaid, unto the said Samuel Brown and Samuel Copeland, or their legal representatives, as soon as they shall have paid and secured the purchase-money and interest, according to the foregoing provisions. And until the payment of the purchase-money and interest shall be accomplished as aforesaid, the second party, for themselves and their legal representatives, covenant and agree with the said George Pepper and his legal representatives, that the latter shall have all the remedies for the recovery of so much of the said annual sum of seventeen hundred and eighty-two dollars, as shall not have been already secured by reserved ground-rents from sub-purchasers, as are usual in ground-rent deeds in Philadelphia, and as fully as if the covenants therein contained and clause of re-entry were herein fully and verbatim repeated; and that clear of all taxes and assessments whatsoever. It being expressly covenanted, understood and agreed, by and between the said parties to these presents, that in case of any failure on the part of the said parties of the second part hereto, or their legal representatives, in the fulfilment of the covenants and agreements herein contained, on their part to be performed, then and in such case, it shall and may be lawful to and for the said George Pepper, his heirs, executors, administrators and assigns, and full and ample power is hereby reserved and given to him and them forthwith, upon any such breach of covenant, and as soon thereafter as to him or them may seem proper or advisable, to re-enter into and upon the said premises, without any further or other recourse to law, or any legal proceedings whatsoever, and the same thenceforth to have and to hold, for his and their own exclusive use, benefit and behoof, forever, without any right or claim on the part of the said parties of the second part hereto, or their legal representatives, to or for any damage therefor."

Judgment having been obtained against Copeland in 1838, his interest in the lot was sold subject to the agreement; and an auditor was appointed by the Court below to distribute the sum of twenty-five hundred and four dollars and ninety-five cents, paid into Court by the sheriff in this case. The auditor reported that the above sum was the net proceeds of the sale of certain real estate, described in the sheriff's advertisement as No. 4, No. 5 and No. 8.

No. 4 sold for                                      $10
No. 5   "                                          $200
No. 8   "                                          $2400

After deducting the expenses, there was a balance for distribution

(Moroney v. Copeland.)

of two thousand four hundred and seventeen dollars and sixty cents. The auditor's report then proceeded to state that four bills for taxes were presented; to two of which no objections were made, viz.:

W. Metcalfe, collector, taxes for 1837, on No. 4,          $4 20
J. Bedford,           "        "        1838, on No. 5,          $5 67

"The other two were for taxes on property No. 8, and were objected to, on the ground that they properly attached to the legal estate of Mr. Pepper in the premises, and not to the equitable interest of Samuel Copeland, which alone was sold. The situation of these premises will be more particularly stated hereafter; and the auditor being of opinion that the taxes ought to be paid in part out of the fund in Court, reports that they should be paid as follows:

The bill of F. Mitchell, collector, amounting to one hundred and thirty-seven dollars and eighty-nine cents, is for taxes for 1836 and 1837, on a large lot (of which property No. 8 is part) held by Samuel Copeland and Samuel Brown, as tenants in common of equal moieties, as hereinafter stated: on part of which,—set off and severed by agreement between themselves—the said Copeland and Brown had built two houses of equal size and value; the one of which, belonging to Copeland, had been previously sold at sheriff's sale, and out of the proceeds of the sale, forty-five dollars and fifty-one cents had been paid as the taxes for 1836 and 1837 on that house so sold. The auditor is therefore of opinion that the same amount, forty-five dollars and fifty-one cents, ought to be deducted from the present bill, as the proportion due for the other house belonging to Brown; and that one-half of the balance (forty-six dollars and nineteen cents) should be paid out of the fund in Court, as the part properly chargeable to Copeland, leaving the residue to be paid by Brown, or collected from his interest in the premises.

The remaining bill for taxes was that of Jacob Stout, collector, for sixty-three dollars and six cents taxes due for 1838; which, being for the amount due for the joint property of Copeland and Brown, exclusive of the said two houses, ought, in the opinion of the auditor, to be equally divided, and Copeland's share (thirty-one dollars and fifty-three cents) be paid out of the fund in Court, leaving Brown's share to be paid by him, or collected from his interest in the premises.

A bill for thirty-one dollars and fifty-cents, ground-rent for eighteen months, due on the 1st of January, 1839, to William and Thomas Savery for property No. 5 was presented, proved and allowed.

A bill against property No. 8, for laying iron pipes for water, and filling up, paving and curbing the foot-way, amounting to four hundred and thirty-eight dollars and twenty-six cents, was presented by Mr. Price on behalf of the district of Spring Garden.

This bill was for account of the whole lot once held by Brown and Copeland as hereafter more particularly stated. But as it

appeared that two hundred and seventy-two feet on Washington street had been transferred to different persons, before the assessment for iron pipes was made, leaving only one hundred and six feet belonging to Brown and Copeland at that time, the bill was reduced by allowing for only one hundred and six feet of pipes at one dollar per foot, and then amounted to three hundred and thirteen dollars and sixty cents, of which one-half (one hundred and fifty-six dollars and eighty cents) is allowed by the auditor to be paid out of the fund in Court, as the share of Samuel Copeland, leaving the other half to be collected from Samuel Brown.

A claim was presented by Mr. Norris on behalf of George Pepper, for eighteen hundred and seventy-five dollars seventy cents as arrears of interest or ground-rent due on account of property No. 8.

This property was part of a large lot or square of ground between Washington and Wallace streets and Tenth and Eleventh streets, in the district of Spring Garden, which formerly belonged to George Pepper, and was by him let to Samuel Brown and Samuel Copeland, by articles of agreement dated November 10th, 1835, a copy of which is annexed to this report.

By this agreement, the said Pepper was bound to sell the said lot to the said Brown and Copeland (or their nominees) or legal representatives for the sum of twenty-seven thousand nine hundred dollars, to be paid or secured by ground-rents in the mode set forth in the articles of agreement, within four years from the date; the interest in the meantime to be paid half-yearly, clear of all taxes and assessments whatever, with the right on the part of Mr. Pepper to have all the remedies for the recovery thereof which are usual in cases of ground-rents in the city of Philadelphia; and the said Brown and Copeland on their part, were bound to erect or cause to be erected on the lot, buildings sufficient to secure the interest or rent, and to pay the said sum of twenty-seven thousand nine hundred dollars, with interest, or so much thereof as should not have been secured by ground-rents in the manner provided by the articles of agreement, within four years from the date.

It appeared that Brown and Copeland took possession of the said lot or square, under this agreement, and in accordance with its provisions, let a lot at the corner of Tenth and Washington streets to Isaac Genther, at a ground-rent of ninety-nine dollars per annum, commencing from the 1st of July, 1836, to whom Mr. Pepper accordingly gave a deed, as required by the terms of the agreement. Brown and Copeland afterwards let six other lots to various persons, to whom Mr. Pepper gave deeds, reserving rents commencing on the 1st of October, 1836, and subsequently six more to other persons to whom Mr. Pepper gave deeds, reserving rents, commencing on the 1st of April, 1837. Brown and Copeland also set off two lots, each fifty-three feet front on Tenth street, one at the corner of Wallace street, and the other adjoining it; which they agreed to

appropriate to themselves in severalty, and upon which they each built a three-story brick house; having obtained Mr. Pepper's consent to charge each lot with a rent of three hundred dollars per annum. Of these, the one at the corner of Wallace and Tenth streets, being the one appropriated to Samuel Copeland, was sold by the sheriff under an execution against the said Copeland, and purchased by Thomas Brientnall, to whom Mr. Pepper gave a deed dated December 14th, 1838, reserving a yearly rent of three hundred dollars. The proceeds of this sale were paid into Court, and in the distribution thereof five hundred dollars were allowed to Mr. Pepper (by agreement of counsel) as the arrears of rent due for the said house and lot, (he having claimed before the auditor in that case the whole amount of arrears due for the whole square.) A statement of these several rents, with the names of the grantees, and the dates of their respective deeds, is hereto annexed.

Brown and Copeland also agreed to let a lot twenty-seven feet front on Tenth street, to Henry Reeves, at the rent of ninety-four dollars fifty cents per annum: of which said Reeves took possession, and erected thereon a house which has been roofed in but never finished. When Mr. Pepper was informed of this agreement, he expressed a willingness to execute a deed according to the terms of his agreement with Brown and Copeland, but was never called upon to do so; and no deed has ever been executed for the lot.

It was proved that Mr. Pepper was present at the sheriff's sale in this case.

Such being the facts, Mr. Pepper presented his claim before the auditor for the amount of interest due, according to the said articles of agreement, after giving credit for the rents received, and the sum of five hundred dollars paid out of the fund raised by the sale of Copeland's house, as above stated.

A statement of the claim, amounting to eighteen hundred and seventy-five dollars seventy cents, is annexed to this report. The statement annexed, shows what would be due if credit were given for all the rents reserved on the lots for which deeds have been executed by Mr. Pepper, including those on which no buildings have been erected.

This claim was objected to on the part of the judgment creditors on several grounds.

1. It was said that this claim was for interest not ground-rent, and therefore not a lien on the property, or the fund in Court, the proceeds of the property.

2. That even if it be considered as ground-rent and a lien, by the articles of agreement, it ought not to be paid out of the fund in Court, which is the proceeds of a sale, not of the property itself, but of an undivided interest therein, which ought not to be held subject to the rent or interest.

3. That these arrears ought not to be taken out of the fund in

(Moroney *v.* Copeland.)

Court, but ought to be paid by the purchaser, who bought expressly subject to the terms and conditions of the agreement between Pepper and Brown and Copeland, and who ought therefore to pay whatever Copeland, whose interest he has bought, was bound to pay.

4. That even if Mr. Pepper ever could have claimed payment of these arrears out of the proceeds of Copeland's interest, his right to do so was barred by the course he pursued in taking five hundred dollars out of the proceeds of the sale of Copeland's house as above stated. The whole amount being then in arrear, was an entire claim which could not be severed or apportioned; and therefore his agreement to receive five hundred dollars at that time was in satisfaction of his whole demand, and bars him from any future claim for the residue.

The auditor is of opinion that neither of these objections can be sustained.

As to the first; he thinks that the arrears, though called interest, are entitled to be regarded in the same light as ground-rent, originating in the same way, from the agreement of the parties, reserved for the use of land, not the loan of money, attached to the land in the same manner, and expressly made recoverable by the same means.

As to the second; he thinks that the landlord has a right to make his rent (to which the interest in this case is assimilated) out of any part of the premises; leaving the tenant who pays it, in cases where the demised premises have been divided, to claim contribution from the others.

As to the third; it appears to the auditor that the sale in this case, was like the sale of property subject to ground-rent, with covenant to build, and clause of distress and re-entry; and that the arrears of interest are to be paid out of the purchase-money, in the same manner as the arrears of rent in ordinary cases of sale of property subject to ground-rent.

And as to the fourth; he does not think that the receipt of the five hundred dollars out of the fund raised by the sale of Copeland's house, ought to bar the present claim; as that was expressly allowed and taken as arrears due for the premises then sold.

For these reasons the auditor is of opinion, that Mr. Pepper ought to receive a part of the fund in Court; but inasmuch as it arises from the sale of Copeland's interest only, the fund ought not to bear the whole burthen, to the injury of his other creditors; and therefore the auditor thinks that a proportionate part should be allowed, as hereafter stated, leaving Mr. Pepper to look to Samuel Brown for the remainder, or in case of his default, to his remedy against the premises, with the right on the part of the purchaser to claim contribution from Brown, if the property now sold should be subjected to future payment on account of these arrears.

To fix this proportion, the auditor thinks that five hundred dollars

(Moroney *v.* Copeland.)

should be added to the amount credited, Mr. Pepper having agreed to put the house of Brown at the same rent as that of Copeland which has been sold, and five hundred dollars having been paid out of the proceeds of that house; and that one-half of the balance thus ascertained, (amounting to six hundred and seven dollars thirty-nine cents,) should be allowed as Copeland's share of the arrears to be paid out of the fund in Court. The auditor does not in this apportionment, allow any credit for the lot taken by Henry Reeves, because it does not appear to him that this lot (so far as Mr. Pepper is concerned,) is separated from the general mass, or that he has any means of compelling the payment of the rent for this lot separate from the rest of the property. It still remained the property of Brown and Copeland under the articles of agreement with Pepper, (subject to the right acquired by H. Reeves,) and Copeland's interest in this lot is a part of the property sold by the sheriff.

The claims next in order are two judgments in this Court against Samuel Copeland, entered on the same day, (February 1st, 1838,) one in favour of James H. Deas, on which the balance due is eighty-seven dollars and forty-one cents; and the other in favour of Henry Libe, on which there is due a balance of ninety-eight dollars eighty-two cents.

The next in order, is an award of arbitrators for fifty-one dollars seventy-five cents, in favour of John Parham, filed in the Court of Common Pleas, on the 3d of April, 1838. The defendant Copeland, has appealed from this award, and the appeal is still pending; but as the award was a lien on the property sold, this amount should be retained to pay the plaintiff, if the award shall be confirmed.

The next judgment in order of time, is that of the Spring Garden Fire Insurance Company, for six thousand dollars, entered in this Court on the 10th of May, 1838; but this debt being secured by mortgage on other property, the company have released all claim upon the fund in Court.

Next are two judgments in this Court, against Samuel Copeland, entered on the same day, (June 9th, 1838,) one in favour of Levi M'Glathery, amounting, with costs, to six hundred and thirty-one dollars twenty-three cents; and the other, in favour of Loyd & Kain, amounting, with costs, to four hundred and fourteen dollars thirty-five cents. This judgment has been marked to the use of H. B. Pennock.

The next claim is a judgment in the Court of Common Pleas, against Samuel Copeland, in favour of Joseph Heaton, entered on the 12th of June, 1838, amounting, with interest and costs, to one hundred and one dollars ninety-eight cents.

If these several claims be paid as above stated, there will remain a balance of one hundred and forty-eight dollars eighty-six cents to be allowed to H. B. Pennock, the equitable plaintiff in the execution under which the sale was made; that being the claim next in order

(Moroney *v.* Copeland.)

and amounting to one hundred and fifty-nine dollars fifty-three cents, as appears by the record."

Annexed to this report was a schedule of deeds executed by Mr. Pepper in pursuance of the agreement, and of the purchase-money received on sales.

To this report both Mr. Pennock and Mr. Pepper filed exceptions: and the Court below, after argument, made a decree re-committing the report to the auditor, and directing him to strike out of the distribution the sum of six hundred and seven dollars thirty-nine cents allowed to Mr. Pepper, and to report a distribution of the fund disallowing his claim. The auditor accordingly made an amended report, disallowing Mr. Pepper's claim, which was confirmed by the Court below. An appeal was then taken, and the following exceptions filed in this Court.

" 1. Because the Court below erred in re-committing the report to the auditor, with instructions to strike out the amount reported to George Pepper, and to report a distribution disallowing Mr. Pepper's claim.

2. Because the auditor has not allowed George Pepper the whole amount of his claim for interest under the articles of agreement.

3. Because the auditor has erred in not allowing F. Mitchell and Jacob Stout the whole amount of their respective bills for taxes.

4. Because the auditor has not allowed the whole amount due for iron pipes, filling, paving and curbing foot-way.

5. Because the decree of the Court below is erroneous and unjust, and against law."

Mr. *Isaac Norris,* for the appellants, cited *M'Mullin* v. *Wenner,* (16 *Serg. & Rawle,* 18.) *Purviance* v. *Lemmon,* (16 *Serg. & Rawle,* 292.) *Vandevender's Case,* (2 *P. A. Browne,* 304.) *Ely* v. *Beaumont,* (5 *Serg. & Rawle,* 124.) *Keiffer* v. *Altman,* (3 *Penn. Rep.* 27.) 2 *Vern.* 524. 2 *Pr. Wms.* 495. *Berry* v. *Mutual Ins. Co.,* (2 *Johns. Ch. Rep.* 608.) *Lindley* v. *Neville,* (13 *Serg. & Rawle,* 229.) *Bantleon* v. *Smith,* (2 *Binn.* 149.) *Walton* v. *West,* (4 *Wharton,* 221.) *Hurst* v. *Rodney,* (1 *Wash. C. C. Rep.* 375.) *Kline* v. *Lewis,* (1 *Wharton's Dig.* 547.) *Anshutz* v. *M'Clellan,* (5 *Watts,* 487.) *Fickes* v. *Ersick,* (2 *Rawle,* 167.) *Hillman* v. *Hillman,* (4 *Rawle,* 447.) *Anderson* v. *Greble,* (1 *Ashmead,* 136.) *Burnell* v. *Menot,* (4 *J. B. Moore,* 340 ; 10 *Eng. Com. Law Rep.* 375.) 4 *Vesey,* 752. *Shaw* v. *Quinn,* (12 *Serg. & Rawle,* 300.) *Pennock* v. *Hoover,* (5 *Rawle,* 315.)

Mr. *Meredith,* contra, cited *Ramsey's Appeal,* (2 *Watts,* 230.) *Auwerter* v. *Mathiot,* (9 *Serg. & Rawle,* 397.)

The opinion of the Court was delivered by

SERGEANT, J.—The appellant in this case is the purchaser at the sheriff's sale, and he excepts to the decision of the Court below on several points.

The first exception is, that the Court erred in not allowing the amount claimed by George Pepper. This amount, the appellant contends, ought to be considered as arrears of ground-rent, which constituted a lien on the land, and was therefore payable out of the proceeds of sale by execution, which were brought into Court to be distributed. The decision of this question depends on the construction to be given to the articles of agreement of the 10th of November, 1835, between Pepper of the one part, and Brown and Copeland of the other part, which, in some respects, is rather of an unusual kind. By this agreement, Mr. Pepper, being the owner of a large lot of ground, contracts with Brown and Copeland, to sell and convey it to them for the sum of twenty-nine thousand seven hundred dollars, payable at the option of Brown and Copeland, either in cash, or in ground-rents issuing out of the premises, to be reserved in deeds to be executed by Pepper in favour of purchasers to be procured by Brown and Copeland, and which when secured by brick buildings, are to be credited towards the purchase-money at a fixed rate. They then covenant to pay the said sum of twenty-nine thousand seven hundred dollars, with lawful interest from the 1st of October, 1836, or to secure it by ground-rents. The whole transaction is to be closed in four years; and so much of the purchase-money and interest as is not then secured by ground-rents, is to be paid off; and on payment, a deed is to be made by Pepper to Brown and Copeland. It is then covenanted by Brown and Copeland, that until such payment, Pepper shall have all the remedies for the recovery of so much of the said annual sum of seventeen hundred and eighty-two dollars (which is the amount of interest on the twenty-nine thousand seven hundred dollars,) as is not then secured by ground-rents from sub-purchasers, which are usual in ground-rent deeds in Philadelphia, and as fully as if the covenants therein contained and clauses of re-entry were therein fully and verbatim repeated: it being expressly covenanted, that in case of failure in the fulfilment of the agreements and covenants therein contained, Pepper should have the power to re-enter without legal proceedings and hold for his exclusive use and benefit, without right or claim by Brown and Copeland to or for any damage therefor.

There seems to be in these articles of agreement, an endeavour to make the annual sum payable on the purchase-money, and not secured by ground-rents, itself a ground-rent, at the same time that it is in its nature and by the terms of the agreement, interest on the purchase-money. These two descriptions of claim, however, are so essentially repugnant and incompatible, that it is impossible, in

VOL. V.—53

legal contemplation, that they can co-exist in the same thing. To constitute a ground-rent, there must be a conveyance of the land— rent being a *redditus* or return in consideration of the use of the land. But Mr. Pepper does not convey the land : he merely articles that he will convey it at certain future periods, either to persons named by Brown and Copeland, who will take the land on ground-rent, and erect buildings, or to Brown and Copeland themselves, on payment of the purchase-money and interest. Till then, Pepper holds the land in his possession, and is to receive interest on the purchase- money. How can the idea of a ground-rent and right of entry. be conceived, where the vendor has not conveyed the land, nor even contracted to deliver the possession to the vendees, as is the case with all the residue of the land on which ground-rents have not been secured ? Besides, if the interest is a lien, the purchase-money itself must be a lien : the last clause of the articles puts them on the same footing, giving a right of re-entry for a failure to perform the covenants and articles generally. This, however, is not pretended by the appellant, and would be in contravention of the doctrine established in *Auwerter* v. *Mathiot*, (9 *Serg. & Rawle,* 397,) that on a sale by the sheriff of the equitable title of the vendee, the judgment creditors of the vendee are entitled to be paid out of the proceeds of sale, and not the vendor, to whom the purchase-money is due. The latter retains his lien, and may follow the land into the hands of the sheriff's vendee. This doctrine applies equally to the principal and interest of the purchase-money, which are inseparable in their nature. Interest is said to follow the principal, as the shadow does the sub- stance. If the one is by these articles created a lien in the nature of a ground-rent, there is no reason why the other is not. The appellant cannot insist that the interest is a lien payable out of the proceeds, but the principal is not. He must claim both as such, or neither. There may, possibly, be some purposes for which the latter clauses in this instrument would be serviceable to the vendor, as against the equitable title of the vendees ; but we concur with the Court below, that the sum in question must be considered as inter- est, and not in nature of a ground-rent, constituting such a lien on the premises as is payable out of the proceeds of the sheriff's sale of the title of Copeland. The decree of the Court below in this respect must therefore be affirmed.

3, 4. The next question is as to the taxes, and the claim for iron pipes, filling, paving and curbing foot-ways, which by act of assem- bly are liens on the property in which Brown and Copeland had an equitable estate at the time they were assessed and incurred. The interest of Copeland was sold by execution on a judgment against him, and the money was brought into Court; and the question is, whether the whole of these claims are to be paid out of the pur- chase-money, or only half of them or none of them ? The general rule is, that with the exception of the first mortgage, (which is

(Moroney v. Copeland.)

exempted by act of assembly,) a judicial sale converts the interest sold into money, and divests all liens on the land existing at. the time of sale.  The lien here resembles a judgment against both: it bound the interest in the whole land; the tenants in common being respectively entitled to an undivided moiety in the whole, neither having the whole of an undivided moiety.  On a sale of the interest of one tenant in common by execution on a judgment against him, the lien of a prior judgment against both is payable out of the proceeds : and the lien of these taxes being against the land of both jointly, is in the nature of a joint judgment, and must be paid out of the proceeds of sale.  But as the effect of such payment is to take the interest of one to pay the whole, he, or those who represent him, have a right of contribution from the other co-tenant, to reimburse them the one-half thus paid.  Copeland would lose one-half of this money now applied to the payment of Brown's share of the taxes : and equity would seem to require, that he should be subrogated to the liens of these claims on Brown's interest, so far as respects the half of them thus paid, according to the decision in *Ramsey's Appeal*, (2 *Watts*, 228.)  The act of the 16th of June, 1836, sect. 86, gives the Court power in these cases of distribution of money raised by execution, " to hear and determine the same according to law and equity."  It would be equitable in the present case to make such a decree ; and it is therefore ordered and decreed, that these claims be paid in full out of the proceeds of the sale brought into Court, but that Brown be subrogated for one-half thereof, to the liens of the claimants against Copeland's interest in the land sold by the sheriff, in the same manner, and to the same extent, as they existed in these claimants at the time of the sheriff's sale : provided that on the settlement of accounts between Copeland and Brown, the latter is found indebted to Copeland, and then for the amount so due, or such portion thereof as the liens may extend to.

Decree accordingly.