# Trust Company *v.* Hodges.

*Ground rent—Break in the record—Presumption arising from series of conveyances and payment of ground rent.*

Where there was a break in the chain of title of a ground rent and immediately after that break the record was consistent throughout and the estate which came to the defendant was made subject to the payment of a ground rent to the party in whom the record showed the legal title to be vested and to his heirs, *held*, that after a long continued and consistent series of conveyances and the payment of ground rent in accordance therewith, the existence of a deed creating the ground rent must be presumed. Such conditions do not disclose the case of an innocent purchaser, without notice, being misled by the record.

*Executory agreement to convey—Ground rent.*

An executory contract to convey land upon ground rent, upon performance of a stipulated condition, leaves the whole legal title in the covenantor, and a ground rent may legally be reserved by proper covenants in the deed, executed in pursuance of the contract.

Argued Oct. 4, 1900. Appeal, No. 25, Oct. T., 1900, by Henry K. Wampole, in suit of the Real Estate Title Insurance & Trust Company, trustee, etc., against Charles Hodges and

Henry K. Wampole, terre-tenant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1899, No. 619, for want of a sufficient affidavit of defense. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. D. PORTER, J. W. W. PORTER, J., dissents.

Rule for judgment for want of a sufficient affidavit of defense. Before the court in banc.

It appears from the record that this was an action of assumpsit for a ground rent deed dated April 29, 1826, to recover the sum of $16.00 alleged to be due October 29, 1899. The ground rent deed or agreement of April 29, 1826, did not purport to convey the land, and contained no words of present assurance. It contained a provision for the conveyance of the title at a subsequent time, upon the performance of a stipulated condition ; it was clearly executory. It was an agreement to convey at some future time the whole legal title in Louis Desauque, the alleged grantor. Charles Hodges, the alleged grantee, having erected the house upon compliance with that condition, became entitled to the conveyance subject to the ground rent, which conveyance was never made, and this equitable title passed under the sheriff's sale to one Wilkinson. After this break in the title there was a long continued and consistent series of conveyances and payment of ground rent in accordance therewith.

Other facts appear in the opinion of the Superior Court.

The court entered judgment in favor of plaintiff for want of a sufficient affidavit of defense. Defendant appealed.

*Error assigned* was entry of judgment against defendant for want of a sufficient affidavit of defense.

*J. Campbell Lancaster,* for appellant.—It will be noticed that the agreement alleged to be a ground rent, which forms the basis of this suit, is not a rent reserved by the grantor of the land at the time the conveyance was made from him to the grantee, but is simply an agreement that the land was to be sold to the grantee, and when the grantee gets a title that he will pay a certain amount yearly as a rent.

This was the state of affairs until the title vested in Moses

Young, who in 1867 made an agreement with the heirs of De-sauque that he would pay a yearly rent of so much upon the property, in accordance with the agreement of 1826, but expressly averring in this deed that no such conveyance reserving the rent was ever made. We have, therefore, no room for inference that there was a ground rent, but we have a distinct averment to the contrary.

A ground rent is in the nature of a rent service: Ingersoll v. Sergeant, 1 Wharton, 337.

The rent, however, must be reserved by deed, and cannot exist independently of the deed, because in Pennsylvania titles are allodial and not feudal: Wallace v. Harmstad, 44 Pa. 492.

It cannot be doubted, therefore, that the agreement set up in this case is not a ground rent, but at best is an executory agreement for the conveyance of land on the one side and to pay a certain sum yearly upon that conveyance on the other: Stewart v. Lang, 37 Pa. 201.

That recitals in various deeds of a ground rent do not create a rent is evidenced by the case of Pierce v. Gardner, 83 Pa. 211.

The two cases cited by plaintiff to the effect that a ground rent could be presumed to exist by prescription are easily distinguished.

But another important feature in this case must not be lost sight of, and that is, whatever the nature of this agreement, whether it be a ground rent, or a charge upon the land, that paper was not acknowledged until 1889, nor recorded until that time. The suggestion immediately occurs, therefore, what was the effect of the sheriff's sale in 1829, upon a ground rent, if you please, or a charge upon the land which was unrecorded at the time? Certainly under the acts and under the decision a purchaser at a sheriff's sale, and those claiming under him would take the property free from any such incumbrance: Salter v. Reed, 15 Pa. 260.

If it were merely a charge on the land a sheriff's sale would of course discharge it: Pierce v. Gardner, 83 Pa. 211; Bryan's Appeal, 101 Pa. 389.

It must be clear then that the plaintiff cannot recover in this action:

1. Because there was no ground rent ever created upon this

land and there was no reservation of the rent by deed of the original grantor at the time of the conveyance of the property: Cadwallader on Ground Rents, para. 193.

2. Because there can be no presumption that there was an original ground rent from the recitals or the payment of the rent for a number of years, because the facts in this case expressly negative the fact that there was a ground rent, and because recitals of a thing that do not exist have no controlling effect.

3. Because whether we call the original agreement of 1826 a ground rent or a charge on the land, it being unrecorded, the purchaser at sheriff's sale took it discharged of any such rent or charge.

4. Because the agreement of 1867 was not a ground rent, as it was made by the parties who had no title to the ground, and therefore cannot affect this question.

5. That at most it was a charge upon the land for the payment of a certain amount of money which in turn was discharged by the sheriff's sale of 1891.

Under no consideration, therefore, can the plaintiff recover in this action, as against the present defendant or terre-tenant.

*Thomas W. Jopson*, for appellee.—Rents do not depend upon a grant by deed; they may exist by virtue of a devise or record or by prescription evidencing an acquisition subject to the rent: 2 Bl. Comm. 266. But we are not obliged to rely upon a presumption of reservation. There is in the case an actual reservation of the rent for the arrearages of which this suit was brought, the payment of which began eo instante with the execution of the agreement referred to.

The mere payment of ground rent by one in possession of real estate for a term of twenty-one years raises the presumption of a valid reservation of the rent: Newman v. Rutter, 8 Watts, 51; McElroy v. Railroad Co., 7 Pa. 536; Wallace v. The Church, 111 Pa. 164.

In order to succeed in his contention the appellant must overcome:

1. A perfectly legal and valid reservation of the rent by the agreement of April 29, 1826.

2. The legal effect of all the conveyances in the line of title

under which he claims, commencing in February, 1829, down to and including the deed to him, every one of which is expressly subject to the payment of the yearly ground rent in question.

3. The truth of the recital in his own deed that the land is subject to the ground rent, which recital is borne out by the uncontradicted averment that from the time of the creation of the rent it has been paid semiannually by the owners of the premises down to April 29, 1899.

4. The effect of the deed of May 29, 1867, which was duly recorded June 11, 1867, confirming the title to Moses Young, subject to the payment of the ground rent.

OPINION BY W. D. PORTER, J., November 19, 1900:

From seventy years prior to the date at which the instalment for which this action is brought became due, the defendant and those under whom he claims had regularly paid ground rent to the plaintiff and its predecessors in title. The defendant now seeks to escape further payments upon the theory that the ground rent was not reserved at the time of the grant of the land to Charles Hodges by Louis Desauque, on April 29, 1826; it is, therefore, only necessary to consider the effect of the agreement between Louis Desauque and Charles Hodges, and the formal deed conveying the fee and reserving the ground rent executed by the heirs of Louis Desauque and Moses Young, in whom the rights of Charles Hodges under the agreement had become vested. But the lot in question was sold at sheriff's sale as the property of Charles Hodges, and conveyed to Wilkinson by sheriff's deed, dated January 10, 1829. On February 6, 1829, Wilkinson conveyed the lot to Moses Young subject to the payment of a yearly ground rent of $32.00 payable on the 29th days of April and October unto Louis Desauque, his heirs and assigns. At that time the record showed the legal title to be in Louis Desauque and there was nothing upon the record to show any interest whatever of Charles Hodges in the land. The equitable title continued in Moses Young and he regularly paid the ground rent for over forty years. By sundry mesne conveyances, each one of which made the grant subject to the payment of this ground rent, the title of Moses Young has become vested in the defendant. The defendant thus had notice by every conveyance through which

he derived title that, to the point at which his record title disappeared, his estate in the land was subject to the payment of a ground rent to Louis Desauque and his heirs. This was not a case of an innocent purchaser without notice being misled by the record ; there was a break in the chain of title and immediately after that break the record was consistent throughout, and the estate which came to the defendant was made subject to the payment of a ground rent to the party in whom the record showed the legal title to be vested, and to his heirs. After such a long-continued and consistent series of conveyances and payment of ground rent in accordance therewith, the existence of a deed creating the ground rent must be presumed: Heckerman v. Hummel, 19 Pa. 64; Wallace v. The Church, 111 Pa. 164.

In the absence of any evidence other than that to be found in the conveyances through which the defendant's title comes, and the payment of rent in accordance therewith, the defendant would, therefore, be held liable for this ground rent; but long after the estate of Moses Young in the premises had become thus fixed for the ground rent, an agreement and deed came upon the record and made clear the manner in which the title to the land had become burdened with the ground rent. The first consisted of articles of agreement, dated April 29, 1826, between Louis Desauque and Charles Hodges, reciting that the former had agreed to let and the latter had agreed to take upon ground rent, upon the terms and conditions set forth, the lot in question. In determining whether this instrument was an immediate conveyance or only an executory contract, we must look for the intention of the parties, to be gathered from every part of the contract. The agreement did not purport to convey the land and contained no words of present assurance. It contained a provision for the conveyance of the title at a subsequent time, upon the performance of a stipulated condition : it was clearly executory: Stokely v. Trout, 3 Watts, 163; Stouffer v. Coleman, 1 Yeates, 393 ; Williams v. Bentley, 3 Casey, 301 ; Stewart's Administrators v. Lang, 37 Pa. 201. This was not a conveyance of land, it was merely an agreement to convey at some future time and left the whole legal title in Louis Desauque: Moroney v. Copeland, 5 Whart. 407. Under the terms of this agreement Charles Hodges undertook to erect a house

upon the land and upon compliance with that condition he and his heirs and assigns became entitled to a conveyance subject to the ground rent, and this equitable title passed under the sheriff's sale to Wilkinson. The latter in his deed to Moses Young recognized the title of Louis Desauque and conveyed subject to it. Young continued to hold under his equitable title, and the legal title remained in Louis Desauque and his heirs until May 29, 1867, when by deed by and between the heirs of Louis Desauque, to whom his title had descended, and Moses Young, in whom the equitable title of Charles Hodges had vested, the covenants of the original article of agreement were executed and the legal title became vested in Moses Young subject to the ground rent which was reserved by proper formal covenants. . The learned court below very properly entered judgment in default of a sufficient affidavit of defense.

Judgment affirmed.

WILLIAM W. PORTER, J., dissents.