# Huehner v. Fisher, Appellant.

*Ground rents—Presumption of grant—Adverse possession—Payment of rental—Marketable title.*

Where a sheriff's deed dated 1774 conveys premises under and subject to a ground rent, and ten consecutive deeds thereafter down to the year 1810, convey the same land subject to the same ground rent, but there is no deed of record, nor other writing known to exist specifically creating the ground rent, nor any record evidence of the title to the premises being in the owner of the ground rent mentioned in the several conveyances, the law will presume that the ground rent in question was created by a grant.

In an action by a vendor of such a ground rent to enforce payment of the purchase-money, where there is no evidence as to how the plaintiff's ancestor became vested in the title to the ground rent, but it appears that the rent was regularly paid to their ancestor and to them for a period of over forty years without any dispute as to the ownership of the ground rent, it will be deemed that the plaintiffs have a title by adverse possession.

The title to such a ground rent is good and marketable, and one who purchases it will be compelled to pay the purchase-money.

Argued Oct. 8, 1915.   Appeal, No. 285, Oct. T., 1915,

by defendant, from judgment of C. P. No. 4, Philadelphia Co., March T., 1914, No. 873, on verdict for plaintiffs in case of Carl Huehner, et al., v. Mollie Fisher. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit to collect the purchase-price of a ground rent. Before CARR, J.

From the record it appeared that on January 28, 1774, a sheriff's deed was executed conveying certain land under and subject to the ground rent in question. Ten consecutive deeds thereafter down to the year 1810, conveyed the same land subject to the same ground rent, but there was no recorded deed or writing produced to show how or when the ground rent was originally created. The evidence disclosed that as far back as the year 1873, the ground rent in question had been paid by the owners of the property to Ellen R. Hollinshead until the time of her death in 1904, when she died intestate and unmarried leaving to survive her the plaintiffs as her heirs at law. The plaintiffs subsequently sold the ground rent to Mollie Fisher, who refused to pay for it on the ground that the title was not good and marketable. The court gave binding instructions for plaintiffs.

Verdict and judgment for plaintiffs for $133.18. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Joseph Gross,* for appellant.—The vendee is not bound to accept a doubtful title. The title must not only be good, but marketable. Every title is doubtful which exposes the holder to litigation: Nicol v. Carr, 35 Pa. 381; Doebler's App., 64 Pa. 9; List v. Rodney, 83 Pa. 483.

*Adolph Eichholz,* for appellee.—The title was good and marketable: Heckerman v. Hummel, 19 Pa. 64;

Newman v. Rutter, 8 Watts 51; McElroy v. The Railroad, 7 Pa. 536; Dorff v. Schmunk, 197 Pa. 298; Dallmeyer v. Ferguson, 198 Pa. 288; Leeds v. Bender, 6 W. & S. 315; Westfall v. Washlagel, 200 Pa. 181.

OPINION BY KEPHART, J., December 20, 1915:

As early as 1774 a deed from the sheriff of Philadelphia County conveyed the premises under and subject to a ground rent. Continuing from that deed, in some ten conveyances, including the deed to the appellant's devisors, without interruption, this same land was conveyed subject to the same ground rent. There is no deed of record, nor other writing known to exist, specifically creating this ground rent, nor is there any record evidence of the title to the premises being in the owner of the ground rent mentioned in the several conveyances. The absence of the written evidence of these grants should not defeat the appellee's right to recover. A ground rent is an estate of inheritance in the rent, while the owner of the land has an estate of inheritance in the land out of which the rent issues. Each is the owner of a fee simple estate. The one is incorporeal, the other corporeal: Hart v. Anderson, 198 Pa. 558; Cobb v. Biddle, 14 Pa. 444. It may be bound by the lien of a judgment or mortgage: Weidner v. Foster, 2 P. & W. 23. And is inheritable: Ingersoll v. Sergeant, 1 Wharton 336. More than a century has elapsed since this ground rent was shown to exist. Apart from the evidence appearing in the conveyance mentioned, the appellees were unable to show that the ground rent was lawfully created. These conveyances, which were made subject to the rent in such continuous, unbroken chain, covering a long period of time, ought to furnish a sound basis on which to presume that the ground rent's inception was contained in a lawful reservation made by the owner of the premises. Without known complaint subsequent owners have acted thereon and it is now too late to deny the existence of the grant. The ground rent will be

presumed to have been created by grant where it appears that a long line of conveyances has been made subject to a ground rent: Trust Co. v. Hodges, 15 Pa. Superior Ct. 299; Heckerman v. Hummel, 19 Pa. 64; Wallace, et al., v. Fourth United Presbyterian Church of Pittsburgh, 111 Pa. 164. The continuous payment of the rent in this case up to the day of trial dispels any possible idea of extinguishment by presumption of law. Each subsequent grantee took title with full notice of the encumbrance against the land and after long continued submission to such outstanding estate cannot now be heard to deny its lawful origin. The presumption of an original grant would be conclusive.

There is no evidence as to how the present owners became vested with the title to the ground rent, whether as heirs at law or subsequent assignees from the original owner. It does appear that as far back as the memory of any of the appellees can go, and that is for a period of over forty years, and by letters from prior owners of the land, this rent was regularly paid and acknowledged by these owners. Like real property, where a claimant avers title by adverse possession, so here we have a claim for an estate, which has many of the incidents of real estate, which claim is founded on all of the elements of an adverse user with no outstanding claimants appearing against them during all this period. "While the statute of limitations does not include within its express legal operation subjects which lie in grant only, yet the courts will apply the principles of the said statutes, as an artificial rule of law, in case where such application would tend to further justice, and render titles secure, hence where an adverse enjoyment of a ground rent has been had for twenty-one years it is the duty of the court to instruct the jury to infer a grant": Wallace v. Fourth Presbyterian Church of Pittsburgh, supra.

The appellant, having contracted to buy this ground rent, refused to pay the purchase-price, giving as her reason that the title was not marketable. This action

was for this purchase-price. It is conceded that the appellant was not required to take anything short of a good title, and if she was offered a title that was defective she could rescind her executory contract, but it is the policy of the law to enforce contracts fairly entered into rather than to permit their cancellation for trifling and unsubstantial reasons. The reasons would be such as would and ought to induce prudent men to pause and hesitate in accepting the title. While these grants are thus created by fiction of the law, they are none the less effective as they are based on circumstances having all the elements of a perfect title save the writings originally creating them. As has been stated, they depend on their analogy to the statute of limitations and for the purposes of this case the time was amply sufficient to have excluded conflicting owners under a disability. A title depending on the bar of the statute of limitations may be a marketable title which a purchaser will be compelled to accept when it clearly appears that the owner's right is lost: Pratt v. Eby, 67 Pa. 396. If this undisturbed possession for a very long time had not a conclusive effect, the most valuable rights would not only be the subject of continual disputes but be liable to be divested or overthrown when, as in this case, the original evidence of title to them had become lost or decayed by time; and it has been well stated "if time destroys the evidence of title, the laws have wisely and humanely made lengthy possession a substitute for that which has been destroyed." Conclusive presumptions that the grant exists admit of no doubt and are fictions of law in the nature of estoppel, and are founded upon public policy or convenience. Conclusive presumptions barring the owner's rights have been held to exist in other incorporeal hereditaments, viz: The use of a road over the land of another without permission or objection: Pierce v. Cloud, 42 Pa. 102; Plitt v. Cox, 43 Pa. 486. The uninterrupted use and enjoyment of a stream of water in a particular way for a period of twenty-one years: Strick-

ler v. Todd, 10 S. & R. 63; Wheatley v. Chrisman, 24 Pa. 298. And in Newman v. Rutter, 8 Watts 51, it was held that a grant of an incorporeal hereditament may, in general, be presumed upon an adverse enjoyment of twenty-one years and upwards; that the circumstances which will justify such presumption are a matter of law for the determination of the court. These grants being founded on conclusive presumptions, they should be regarded in the same light as though the grants had been lawfully shown to exist and furnishing a complete chain of title. Such being the case this was a marketable title and should have been accepted by the appellant.

The judgment of the court below is affirmed.