# Wallace et al. *versus* The Fourth United Presbyterian Church of Pittsburgh.

While the statute of limitations does not exclude within its express legal operation subjects which lie in grant only, yet the courts will apply the principles of the said statutes, as an artificial rule of law, in case where such application would tend to further justice, and render titles secure, hence where an adverse enjoyment of a ground rent has been had for twenty-one years it is the duty of the court to instruct the jury to infer a grant.

Where a person who is entitled to a ground rent for life grants the same in-fee by a deed of trust, under the terms of which the grantee is to continue to receive the instalments of rent during her life, such deed and continued reception of instalments of rent will not originate an adverse possession, but the reception of rent will be referred to life estate.

November 3d, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 1, of *Allegheny county*: Of October and November Term, 1885, No. 131.

Action of covenant to recover eighteen instalments of ground rent of $156 each, falling due on April 1st of each year from 1865 to 1882, both inclusive, brought by Charles Wallace and others, children of Charles Wallace, deceased, against The Fourth United Presbyterian Church of Pittsburgh. The defendant pleaded *non est factum*, the statute of limitations, and a special plea.

On the trial the plaintiff proved the following case: On September 19th, 1785, one Thomas Hutchinson conveyed eight acres of land, which included the land out of which the rent was claimed in the present action, to George Wallace. At that time there were two persons of that name, father and son. On April 10th, 1811, George Wallace the elder entered into an agreement of sale of the said land with one Boyle Irwin, reserving a perpetual ground rent of $165; George died in 1812, leaving a will in which contained the following clause, referring to the land in question:

"And be it understood that I purchased an out-lot in the Allegheny bottom from Thomas Hutchins, and the deed is in the name of my son George; and in case George should claim said lot in his own right, in that case my executor, hereinafter mentioned, shall have it valued, and if he chooses to receive it at such valuation he may, but in case such valuation shall be greater than his part, he must pay to the other surviving legatees the overplus to make their share alike."

Partition was made of the real estate of the decedent; the

sheriff's return, filed November 29th, 1814, awarded the eight acres, above mentioned, to Charles Wallace, reciting the fact that it was leased to Boyle Irwin at the annual rent of $165. To the distribution of the realty of the decedent, George Wallace and the other heirs agreed in writing, and the partition was confirmed in open court. Previous to the partition George Wallace the younger and wife had, on July 25th, 1814, executed a ground rent deed for the eight acres to Boyle Irwin, reserving the same rent. George Wallace the younger died in 1826, and by his will bequeathed everything of which he died possessed, the personalty absolutely, and his real estate for life, to his wife Jane, who subsequently married the Rev. Zera Coston. During George's life he gave orders to Charles for the rents, upon the presentation of which orders Charles collected the rents. After George's death, as testified by his widow, Charles got no more rents, but George's widow received the same regularly up to 1864. On January 17th, 1831, Jane Wallace executed a deed of trust, reciting the indenture of July 25th, 1814, and that the amount of rent therein reserved had been reduced by payments to $156, and conveying the said ground rent to Nathaniel Holmes, in fee, in trust to pay over the rents to the grantor during her life, on her death to Ann Gibson, mother of the grantor, during her life, if Ann should survive the grantor, but if she should not survive her then upon the death of the said grantor, to assign and transfer the said ground rent to the lawful children of Charles Wallace. Jane Wallace died in 1864, her mother having died before her.

Irwin entered on the land covered by the lease, and laid it out in town lots. On January 8th, 1838, one of these lots was conveyed to the trustees of the Third Associate Reformed Church. The agreement of sale described this lot as lot No. 1 in Irwin's Plan, fronting 78 feet 1½ inches on Penn Avenue, Pittsburgh, and extending in depth one hundred feet; the consideration recited was $4,000, of which $1,400 was to be paid in instalments, and the remaining $2,600 was to remain in the hands of the trustees until the Wallace ground rent was purchased or discharged from the whole eight acres, and in the meantime in lieu of interest on the $2,600, the trustees were to pay the ground rent. The trustees entered, built a church, and paid off the $1,400, according to the agreement, this last instalment of said sum being paid June 29th, 1850; whereupon Irwin and wife by deed of perpetual lease conveyed the said lot to the Third Associate Reformed Church, reserving a rent of $156 per annum, the deed recited that it was made in pursuance of the agreement of 1838, and rent covered no consideration other than the payment of the

ground rent. In 1858 one Morrison obtained a judgment against the Third Associate Reformed Church, and had an execution issued thereupon, under which the said lot No. 1 was in 1860 sold to A. M. Brown, who received a deed from the sheriff therefor. In the same year Brown conveyed the said lot to the Second Reformed Presbyterian Congregation of Pittsburgh, and by deed dated July 22d, 1862, the said congregation conveyed the lot to the Fourth United Presbyterian Church, the defendant; the deed recited that the property was conveyed, "subject to ground rent."

The plaintiffs having closed, the court, on motion of the defendant, entered a compulsory nonsuit, which the court in banc subsequently refused to set aside, whereupon the plaintiffs took this writ.

*Levi Bird Duff*, for plaintiffs in error.—The record shows that title was in Charles Wallace, under the partition, and circumstances show that George's deed of 1814 was not an assertion of title in himself. Charles collected the rent until George's death. The order of George is explained by the fact that Irwin, knowing the title, would probably refuse to pay without the receipt of both Charles and George. What occurred after George's death between Charles and the widow does not appear, but in 1831 the widow's deed recites that she is the owner in fee; she could only become owner of this fee from Charles Wallace, and under the circumstances the law will presume she so acquired the title: Whart. Ev., § 1347; Hastings *v.* Wagner, 7 W. & S., 215; McElroy *v.* Railroad, 7 Barr. 536; Carter *v.* Tinicum Fishing Co., 77 Pa. St., 310. But further, on the death of George in 1826, Jane Wallace took possession of the ground rent, and Charles never afterwards received it, therefore title is vested in Jane and Holmes under the statute of limitation; and on the death of Jane in 1864, Ann Gibson having previously died, the title vested in the plaintiffs, and a conveyance from Holmes, the trustee, was not necessary to perfect the plaintiff's title. The defendant's lot is specifically charged with the whole rent, the charges directly in the line of the defendant's title, and the fund to answer the rent is in its hands.

The Statute of Limitations is not a bar to the plaintiff's action, their right did not accrue until April 1st, 1865, at which date the first instalment of rents, accruing after the death of Mrs. Jane Coston, became due. This action was brought April 14th, 1882.

*W. S. Miller* (with him *R. B. Carnahan*), *contra.*—George's acts amount to an assertion of title in himself. The deed of

Jane Wallace cannot change the rights which she had under her husband's will, and cannot originate an adverse possession in her, her estate in the rent was, and remained a life estate. Besides, she could not purchase or acquire an outstanding title to the prejudice of her husband's heirs: Weaver v. Wible, 1 Casey, 270; Cook v. Nicholas, 2 W. & S., 27; Keller v. Auble, 8 P. F. S., 410; Tyler on Ejectment, 71, 72, 73, 166, 167; Myers' Appeal, 2 Barr, 463, 466.

Mr. Justice CLARK delivered the opinion of the court, January 4th, 1886.

This action of covenant was brought by the heirs of Charles Wallace, deceased, against the Fourth United Presbyterian Church of Pittsburgh, to recover rent, according to the provisions of a certain instrument of writing under seal, executed by one George Wallace to Boyle Irwin, and bearing date 25th July, 1814. The plaintiffs claim to recover the rent falling due on the first day of April in each year, from 1865 to 1882, inclusive, at the rate of $156 per year. The original grant, upon which rent was reserved, embraced about eight acres, and covered all the ground lying between what is now known as Penn Avenue and the Hill, which according to the subsequent plot of the city of Pittsburgh, is embraced between Seventeenth and Nineteenth streets; the ground now charged, however, is part thereof only, being a lot seventy-eight feet front and one hundred feet deep, situate on the corner of Penn Avenue and Harrison street, which now is, and during the period stated, has been, in the possession and actual occupancy of the defendants.

In order that the plaintiffs may recover, it must appear that they are legally invested with the title of George Wallace, and that the defendants hold as the assignees of Boyle Irwin. The title, it is admitted, was originally in one Thomas Hutchins, who on the 19th September, 1785, conveyed to George Wallace. On the 10th of April, 1811, George Wallace, by a contract in writing, agreed to sell and convey the eight acres hereinbefore mentioned to Boyle Irwin, in consideration of an annual ground rent reserved, of $165, payable annually forever. At the date of the conveyance by Hutchins, and of the agreement to convey upon ground rent, there were two persons known as George Wallace, father and son, whom for convenience of reference we may designate as George Wallace the elder and George Wallace the younger, respectively. George Wallace the elder, having previously made his last will and testament in writing, died in the month of August, 1812. In his said will, which was afterwards duly proven, there is a clause as follows:

[Wallace *v.* Fourth Presbyterian Church.]

" And be it understood that I purchased an out-lot in the Allegheny bottom from Thomas Hutchins, and the deed is in the name of my son George; and in case George should claim said lot in his own right, in that case, my executor, hereinafter mentioned, shall have it valued, and if he chooses to receive it at such valuation, he may; but in case such valuation shall be greater than his part, he must pay to the other surviving legatees the overplus to make their shares alike."

On the 14th November, 1812, George Wallace the younger, instituted a common law action of partition, in the Common Pleas of Allegheny County, against the remaining heirs and devisees of George Wallace the elder, deceased; in his precipe he described, inter alia, as part of the estate held in common by the heirs and devisees aforesaid, the following:

" Also one piece of land on the township road in Pitt township, leased on perpetual lease to Boyle Irwin, containing eight acres."

George Wallace the younger was the demandant or plaintiff in the proceedings; the partition was made and the purparts allotted to the parties as devisees under the will of George Wallace the elder, which was the common source of their title. George Wallace the younger could not, therefore, have been ignorant of the provisions of the will; he knew that his father claimed the beneficial ownership of the premises mentioned, and the right to charge him with the valuation thereof in the distribution of his estate, in the event of his acceptance of the title. When, therefore, George Wallace the younger, afterwards, formally, and in writing, embraced the same premises in his precipe for partition, described it as a part of his father's estate, caused it to be valued, and to be allotted to his brother Charles as such, without objection on his part, he certainly precluded himself from afterwards denying the title which he thus asserted. The judgment *quod partitio fiat*, the execution thereof under the writ *de partitione facienda*, and the award of the purparts, taken with the agreement of the heirs, and the final decree that the partition made remain firm and stable forever, form a record of events, in the history of this title, which George Wallace or his heirs, even to assert the truth, would not now be permitted to gainsay.

It is true, that pending the partition, George Wallace, in execution of the previous agreement, made and delivered to Boyle Irwin the conveyance, dated July 25th, 1814, but the valuation and award of the eight acres were expressly subject thereto; the rights of Boyle Irwin were recognized, and Charles Wallace was by the decree entitled to the rents and the reversion.

It appears, however, that George Wallace, notwithstanding the partition and the award of this land to his brother, from the date of the decree in the year 1815, to the time of his death in 1826, continued in the uninterrupted possession and control of this rent. During all that period it was paid to him, or upon his order. Charles Wallace himself seemed to recognize the right of George to receive the rent, by presenting to Irwin from year to year, the order of George Wallace for the same. By the last will and testament of George Wallace, the younger, Jane Wallace, his widow, was entitled to all his personal estate, absolutely, and to "the rents, issues, and profits, arising from every description of · real property" during her life. After his death, his widow received these rents, regularly and uninterruptedly, from the year 1826 to 1864, a period of thirty-eight years, without objection and without claim, on the part of Charles Wallace, who all that time resided in the city of Pittsburgh, and continued there to reside, until his decease in the year 1877.

On the 17th of June, 1831, in the deed of trust which she then executed to Nathaniel Holmes, Jane Wallace, it is true, asserted her absolute ownership of the rent, and by that deed made a full and final disposition of it in fee. But there is no evidence of any adverse claim on her part until the date of this deed, and then she asserts that she "is *now* invested with the right in fee simple." It must be observed, too, that Jane Wallace entered into the enjoyment of the rents at the death of her husband; that the deed is executed by her, expressly "as the widow of George Wallace, deceased," and its recitals are only as to his title. As by her husband's will she was clearly entitled, and there is no evidence whatever of any other title in her, she will, we think, be presumed to have taken and to have held and received the rents as such devisee.

Such, beyond doubt, is the presumption, from the death of George Wallace in 1826, to the date of the trust deed in 1831; and if her title for these years was agreeable to and under the will, it could not by the mere force of her own deed of trust afterwards made, become adverse to those whose interests were in remainder.

It would appear, notwithstanding the partition proceedings and the decree therein, therefore, that for a period of almost fifty years, the rent accruing under this deed to Boyle Irwin, has been in the continuous enjoyment of George Wallace and the devisees under his will. An adverse possession of land for twenty-one years is sufficient under the statute of limitations to confer title to the possessor, and although the statute

does not directly apply to a merely incorporeal right, the same considerations of policy and convenience, which give rise to the statute, in analogy to it, will in some cases raise a presumption as applicable to the right issuing out of the land, as the statute is to the land itself: Starkie on Evid., 750. Thus, the use of a road over the land of another without permission or objection: Pierce *v.* Cloud, 42 Pa. St., 102; Plitt *v.* Cox, 43 Id., 486, or the uninterrupted use and enjoyment of a stream of water in a particular way for a period of twenty-one years: Strickler *v.* Todd, 10 S. & R., 63; Wheatley *v.* Chrisman, 24 Pa. St., 298, will in each case afford a conclusive presumption of a grant.

In Newman *v.* Rutter, 8 Watts, 51, it was held that a grant of an incorporeal hereditament may, in general, be presumed upon an adverse enjoyment of twenty-one years and upwards; that the circumstances which will justify such presumption is matter of law for the determination of the court; and the jury, in a proper case, will be required, or at least advised, to infer a grant. The ground of the presumption, in such cases, is the difficulty of accounting for the possession and enjoyment, without presuming a grant or other lawful conveyance. So, in McElroy *v.* Railroad Co., 7 Pa. St., 536, seisin of a ground rent for twenty-one years was held to afford a legal presumption of title to it; and in Heckerman *v.* Hummel, 19 Pa. St., 64, payment of a ground rent for upwards of twenty-one years, in accordance with a recital of the title deeds, was said to raise a presumption of the existence of an ancient ground rent deed.

Thus, although subjects which lie in grant only do not fall within the express legal operation of the statute of limitations, the courts have in furtherance of justice, and for security of title, applied the principles of the statute to them, as an artificial rule of law, and it is the duty of the court, in a proper case, to advise and instruct the jury, to infer a grant of an incorporeal hereditament after an adverse enjoyment of it for twenty-one years. Witnesses will die, papers will be lost or destroyed, and the exact proof of an ancient transaction thereby often becomes exceedingly difficult, sometimes impossible; the rule of law which authorizes the presumption is therefore founded in necessity, and should be applied in all proper cases.

It seems to us, therefore, that whilst the plaintiff may have produced evidence of the title of their ancestor, Charles Wallace, at the date of the decree in partition, they have also given in evidence such matters and things subsequently occurring as necessarily obliged the court to advise the jury, that if the testimony adduced by the plaintiffs themselves was be-

lieved, it must be presumed that a grant or other conveyance was then or afterwards made by Charles Wallace to George Wallace the younger, which entitled him in his lifetime, and his widow after his death, to do what without objection or hindrance, and under a claim of right, they, for fifty years, had done.

The judgment is affirmed.