**Slutter v. Kerrick**

C.P. of Monroe County, No. 3729 CIVIL 2014

*John B. Dunn*, for plaintiffs.
*Richard S. Bishop*, for defendants.

HIGGINS, *J.*, June 5, 2015—

ADJUDICATION

This case involves a family property dispute. On May 7, 2014, Plaintiffs Stephen R. Slutter, Sr., Barbara L. Slutter, h/w, John Straukas, Jr. and Elizabeth L. Straukas, h/w ("Plaintiffs") filed a complaint in ejectment against Defendants Alfred A. Kerrick, II and Marlies J. Kerrick, h/w, and Kevin Kerrick (collectively "Defendants"). The action follows the sale of real property consisting of approximately 24 acres from Mary Lou Kerrick to her daughter, Barbara L. Slutter, and the remaining Plaintiffs. Defendant Alfred A. Kerrick is the son of Mary Lou Kerrick and brother of Barbara L. Slutter. The sale of the property included the farm; however a portion of the property was being used by Defendants in furtherance of their construction business. On June 17, 2014, Defendants filed an Answer and New Matter to the complaint in ejectment. During the first day of hearing, Defendants orally requested to amend their Answer. We granted leave for Defendants to amend their Answer over the objection of Plaintiffs. A non-jury trial was held over the course of two separate days; September 18, 2014 and January 8, 2015.

FINDINGS OF FACT

1. Plaintiffs are owners of real property located in Tobyhanna Township, Monroe County, Pennsylvania ("property").

2. The property was previously owned by George E. Kerrick and Mary Lou Kerrick, husband and wife, and upon the death of George E. Kerrick, the property was vested solely in Mary Lou Kerrick.

3. Plaintiff Barbara L. Slutter is the daughter of George E. Kerrick and Mary Lou Kerrick and Plaintiff Stephen R. Slutter is the husband of Barbara L. Slutter.

4. Plaintiff Elizabeth L. Straukas is the daughter of Stephen R. Slutter and Barbara L. Slutter. John W. Straukas, Jr. is the husband of Elizabeth L. Straukas.

5. Defendant Alfred A. Kerrick is the son of George E. Kerrick and Mary Lou Kerrick, and Marlies J. Kerrick is the wife of Alfred A. Kerrick.

6. Defendant Kevin Kerrick is the son of George E. Kerrick and Mary Lou Kerrick.

7. The property was used as a farm by the Kerrick family for many years.

8. In the late 1980s George E. Kerrick, Mary Lou Kerrick, Alfred A. Kerrick and Marlies J. Kerrick formed a partnership known as "George E. Kerrick & Son" ("partnership") in order to conduct a construction business.

9. The partnership listed the principal place of business as the property.

10. The partnership operated its business from the property using a small portion of the property to park vehicles and it uses several structures to house certain construction material and debris.

11. The partnership also used a lane, a part of which contained Defendants Alfred A. Kerrick and Marlies J. Kerrick's (hereinafter collectively referred to as "Kerrick")

driveway, to access the property and structures used by the partnership.

12. In 2009, Defendant Kevin Kerrick became a junior partner in the partnership. Kevin Kerrick was given his grandparent's, George E. Kerrick and Mary Lou Kerrick's interest in the partnership. Kevin Kerrick did not make a financial contribution at the time he entered the partnership.

13. On June 27, 2006, George E. Kerrick and Mary Lou Kerrick executed a quit claim deed into a revocable trust named the "Kerrick Family Trust" ("trust"). After George E. Kerrick died, Mary Lou Kerrick revoked the trust and conveyed her interest in the property to Plaintiffs on October 2, 2013.

14. From 1988, the partnership made several investments to improve the property, including enlarging the chicken coop and modifying sheds for storage of construction materials.

15. The use of the property by the partnership began with the permission of George E. Kerrick and Mary Lou Kerrick.

16. A sketch of the area in dispute is set forth in Plaintiff's Exhibit 6, which was prepared by Stephen R. Slutter.

17. Prior to October 2013, Mary Lou Kerrick met with Attorney Ralph Matergia to discuss the sale of the property to Plaintiffs.

18. Attorney Matergia testified credibly that Mary Lou Kerrick was clear about her intentions to convey the property to Plaintiffs. He testified that Mary Lou Kerrick did not want her son, Albert A. Kerrick, to be involved in the property.

19. Attorney Matergia stated that Mary Lou Kerrick, as the surviving trustee in the trust, had the authority to convey the property to Plaintiffs.

20. After the conveyance, Plaintiffs asked Defendants to cease from using the property.

21. Defendants have not stopped using the property, however, Defendants have removed some encumbrances and construction debris.

22. A portion of the Kerrick's driveway/parking area is located on the property.

23. Defendant Marlies J. Kerrick also maintains a flower garden adjacent to her residence which is located on the property.

24. On May 7, 2014, Plaintiffs filed an action in ejectment, seeking to eject Defendants from the property.

25. Plaintiffs' action also request Defendants pay fair rental value for the portion of the property used for the partnership business.

## DISCUSSION

In the present case, Plaintiffs are bringing this action in ejectment in order to eject Defendants from entering upon and using the property for the furtherance of the partnership business. Defendants, however, claim that a license was granted to them and the partnership permitting their use of the property. "[A] license is a mere personal or revocable privilege to perform an act or series of acts on the land of another." *Morning Call, Inc. v. Bell Atlantic Pennsylvania, Inc.*, 761 A.2d 139, 144 (Pa. Super. 2000) (citation omitted). "[Although] a license maybe created by a written instrument, it is usually created orally."

*Kovach v, General Telephone Co., of Pennsylvania*, 489 A.2d 883, 885 (Pa. Super. 1985) (citation omitted). "[A] license conveys no interest or estate in land." *Id.* 489 A.2d at 885. However, a license may become irrevocable under the rules of estoppel and in those circumstances...similar to an easement." *Id.* 761 A.2d at 144. "[T]he irrevocable license gives absolute rights, and protects the licensee in the enjoyment if those rights." *Id.* 761 A.2d at 144 (citation omitted).

Here, Mary Lou Kerrick's testimony at trial indicated that the property contained a family farm which has been in operation over 120 years. Mary Lou Kerrick wants the property to be maintained as a farm. She testified that she conveyed the property to Plaintiffs without reservation. Mary Lou Kerrick and her late husband, George E. Kerrick, started the construction business ("business") with Alfred A. Kerrick and Marlies J. Kerrick and later, Kevin Kerrick joined the business. Plaintiff Stephen R. Slutter, Sr. was involved for a short time in the business as a carpenter's helper. Mary Lou Kerrick indicated that the business was located in the vicinity of Kerrick's home and the business used the sheds and the chicken coop to store construction items. Although the sheds and chicken coop were supposed to be used jointly by the farm and business, Mary Lou Kerrick indicated that the buildings were enlarged by the business for business purposes. Mary Lou Kerrick also stated that the flower garden is maintained by Marlies J. Kerrick.

"A license to use another's land will become irrevocable where the licensee, in reliance upon it, treats his land in a way he would not have treated it except for the license, that is, by spending money for such changes as would prevent his being restored to his original position."

*Philadelphia Regional Port Authority v. Approximately 1.22 Acres of Land (identified as Savage Yard) in Philadelphia, Pennsylvania*, 2008 WL 1018324 (E.D. Pa. 2008) (citation omitted). "An owner who allows a use of the land to continue 'under circumstances in which it is reasonable to foresee that the [user] will substantially change position' is thereafter estopped from denying the existence of an easement in favor of the user." *Id.* citing Restatement (Third) of Property (Servitudes) at §2.10(1). Accordingly, once irrevocability is established, the license gives "absolute rights, and protects the licensee in the enjoyment of those rights." *Id.* Moreover, the successors-in-title take subject to the irrevocable license if they had notice of the license before the purchase. *Kovach v. General Telephone Co. of Pennsylvania*, 489 A.2d 883, 885 (Pa. Super. 1985) (citation omitted).

According to the testimony, Defendants use of the property was permissive. The business was started on the property by George E. Kerrick and Mary Lou Kerrick. Defendant Alfred A. Kerrick and Marlies J. Kerrick became involved in the business after his retirement from a local police department. During that time, the business operated from the property and used several buildings for storage. Mary Lou Kerrick and George E. Kerrick transferred their interest in the business to Kevin Kerrick, their grandson. The business maintained operations from the property and continued to use structures on the property. After George E. Kerrick passed away, the business continued the same operations as before with Mary Lou Kerrick's permission. At some point, Mary Lou Kerrick became increasingly unhappy over a financial arrangement concerning the transfer of her interest in the business to Kevin Kerrick. Mary Lou Kerrick was upset over the management of the

business and that at one point bankruptcy was suggested by Defendants. However, throughout this time, Mary Lou Kerrick continued to allow Defendants to use buildings and the property for their business. Mary Lou Kerrick was aware that the business was always operated from the property and she was aware of the expansion of the business, including the repairs and remodeling to buildings for business purposes. Defendants produced copies of invoices for several improvements made on the property.

In addition, Stephen R. Slutter was, at one time, an employee of the business, testified that he has lived on the property for 31 years. After he purchased the property, he requested Defendants to stop using two structures for business purposes. Mr. Slutter acknowledged that Defendants expended money to remodel some of the buildings for the business. He acknowledged that the business has been operating from the property since 1983 mainly in the same location near the Kerricks' home. Defendants access the property from a lane which is set forth in their deed. Besides the use of buildings, Defendants park business vehicles on the property. Mr. Slutter also indicated that the business has only operated from its current location. Defendants removed some debris and moved a dumpster at Stephen R. Slutter's request. In addition to the ejectment of Defendant from the property; Stephen R. Slutter requested fair rental value for Defendants' use of the property.

Alfred A. Kerrick also testified at trial. He stated that at the time Kevin Kerrick joined the business, he did not make a financial contribution Alfred A. Kerrick testified that he had a severance arrangement with his parents when their interest in the business was transferred to Kevin Kerrick which was paid monthly. In 2008, these payments stopped

due to a decline in the housing industry and the business lost three major clients. Alfred A. Kerrick stated that he stopped burning household trash after Plaintiff acquired the property and the business has cleaned up construction debris and materials from the property. Alfred A. Kerrick agreed that the business may have been able to be relocated in the past; however, it would now create a financial burden on the business after significant expenditures of money for improvements. Alfred A. Kerrick began the business with his father and he relied upon maintaining the business at its current location due to the improvements. Alfred A. Kerrick said it is his father's legacy and the property was used for both a farm and the construction business. Stephen R. Slutter asked Defendants to sign a lease for $100 per month. Alfred A. Kerrick would not agree to the lease since it required the business to stop using the lane to access the property. At hearing, Stephen R. Slutter testified that $300 would be a fair and reasonable amount for the Defendants' use of the property.

After reviewing all the testimony presented at trial, we believe that an irrevocable license has been established by Defendants. First, the businesses' use of the property was permissive from 1983 until Plaintiffs acquired the property in 2013. The licensee (business partnership) expended a significant amount of money to improve buildings on the property to suit the business needs. Mary Lou Kerrick allowed the improvements to be made on the property. Stephen R. Slutter testified that he has lived on the property for 31 years and he was aware that the business was spending money for such improvements. Since Mary Lou Kerrick allowed Defendants to substantially change their position by the expenditure of money on improvements, an irrevocable license resulted. It was reasonable for Mary

Lou Kerrick to foresee that Defendants had substantially changed their positions by the improvements. These improvements began in 1987 when Mary Lou Kerrick's husband was still involved in the business.

Given all the facts in this case, we believe that an irrevocable license was established and that the successors-in-title. Plaintiffs had actual notice of the license prior to the conveyance. Plaintiffs were aware that Defendants expended money to improve the area of the property being used by the business. Defendants, in reliance of indefinitely using the property, financed improvements to the property. Accordingly, we find an irrevocable license in favor of Defendants only to the portion of the property, i.e. chicken coop and overhang roof, which has been improved by the business as well as the parking area maintained and consistently used by the business. This area from the lane depicted in Plaintiffs' Exhibit 6 shall extend 10 feet in a southerly direction beyond the overhang roof of the chicken coop and continue in a westerly direction for approximately 135' to the common boundary of property, now or formerly, Robert A. Kessler, as depicted in the Final Minor Subdivision Plan of George and Mary Lou Kerrick dated March 11, 1997.

Additionally, we believe that Defendant Marlies J. Kerrick expended substantial money and labor to maintain the flower garden which is located adjacent to the Kerrick home. Ms. Kerrick initially placed the flower garden in its present location with permission of Mary Lou Kerrick. The flower garden is close to her home. There was no testimony submitted into evidence that anyone objected to the flower garden. We believe that it is reasonable to foresee that money must be expended to build and maintain the flower garden. Also, Defendant Marlies J. Kerrick has

expended her time to build and maintain the flower garden. Consequently, we believe that an irrevocable license for the existing flower garden has been established in favor of Defendants.

We believe that the area where the flower garden is located, adjacent to the Kerrick's house, has been sufficiently identified in Plaintiffs' Exhibit 6 and Defendants shall be permitted a license to maintain the flower garden with a five foot perimeter around the flower garden. The license shall also include use of the lane to permit access to the property by Defendants. The use of the lane shall continue to the area of the chicken coop and overhang roof with the boundaries as described above.

Plaintiffs have also requested fair rental value of the area in an amount not less than $100 per month. Stephen R. Slutter testified that a fair rental value is $300 per month, which we believe is a fair reasonable amount for the Defendants' use of the property set forth herein. The irrevocable license granted herein shall continue so long as the flower garden is maintained by the Defendants and/or George E. Kerrick & Son construction remains a viable business.

## CONCLUSIONS OF LAW

1. An irrevocable license in favor of Defendants existed between the parties.

2. Defendants' have established by a preponderance of the evidence that they have an irrevocable license in the areas set forth herein.

3. Plaintiffs have established by a preponderance of the evidence that they are entitled to a judgment of ejectment against Defendants from their property except as specifically set forth herein.

4. Defendants have removed all offending personal property from the property except for the personal property in the chicken coop and parking areas.

5. Plaintiffs has established by a preponderance of the evidence that they are entitled to the amount of $300 per month for Defendants use of the property.

## VERDICT

AND NOW, this 5th day of June 2015, it is ordered as follows:

1. The Court finds that Defendants have an irrevocable license in Plaintiffs' property as set forth in the attached Adjudication.

2. Plaintiffs have established by a preponderance of the evidence that they are entitled to a judgment of ejectment against Defendants from their property except as specifically set forth in the attached Adjudication.

3. Plaintiffs have established by a preponderance of the evidence that they are entitled to $300 per month for Defendants use of the property, effective 30 days from notice of this Order.