J-S66038-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| ELMER LEE HILL, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES D. CLAWSON AND NANCY CLAWSON, HIS WIFE, | |
| Appellants | No. 610 WDA 2017 |

Appeal from the Judgment Entered April 13, 2017
in the Court of Common Pleas of Indiana County
Civil Division at No.: 50513 CD 2014

BEFORE: BENDER, P.J.E., DUBOW, J., and PLATT, J.*

MEMORANDUM BY PLATT, J.:                    FILED JANUARY 12, 2018

Appellants, James D. and Nancy Clawson, appeal from the April 13, 2017

judgment, following a bench trial, finding against them and in favor of Appellee

Elmer Lee Hill in this action in equity. For the reasons discussed below, we

affirm.

We take the underlying facts and procedural history from the trial court's

prior opinions in this matter and our independent review of the certified

record.

> This matter came before the [trial c]ourt at a non-jury trial
> on October 24, 2016. The litigation arose from a dispute between
> owners of adjacent properties where a storm water and sewage
> pipeline serving [Appellee's] parcel runs though [Appellants']

_____

* Retired Senior Judge assigned to the Superior Court.

parcel. [Appellee] maintains that he has an irrevocable license to use the pipeline for drainage while [Appellants] argue that any license they provided was strictly to a prior owner and was non-transferrable. [Appellee sought] an [o]rder declaring that he ha[d] a permanent underground easement over [Appellants'] land for the discharge of effluent, storm, and drain water.

The two parcels involved in this litigation originally were part of one larger tract of land owned by [Appellant] James D. Clawson's grandparents, George N. Rose and Alma V. Rose (hereinafter "the Roses"). In 1957, [Appellant] James D. Clawson's parents, James C. Clawson and Janet R. Clawson, purchased a tract of land from the Roses and constructed a home. This home and tract of land is now owned by [Appellee].[1] In 1979, [Appellants] also purchased a tract of land from the Roses and in 1980, built a home. This property adjoins [Appellee's] property and is where [Appellants] currently reside.

The pipeline at issue runs from [Appellee's] home, across the rear portion of what is now [Appellants'] property, and discharges into a stream. The pipeline was originally constructed by [Appellant] James D. Clawson's father when he built the dwelling now owned by [Appellee]. At trial, [Appellant] James D. Clawson stated that he previously moved the pipeline when he constructed his own home and at that time, it was tied into his French drains. Later, after [Appellants] experienced sewage backups in their own basement, the pipe was removed from the connection into their French drains and the elder Clawson installed a pipe running directly from his residence into the creek. That pipeline currently extends to the creek today. In the late 1990s, [Appellants] constructed a new garage and the pipeline was crushed when heavy trucks drove over it in the process. When that occurred, [Appellants] repaired the pipeline along with Robert Bell (hereinafter "Bell"), a prior owner of what is now [Appellee's] property.

The specific events leading to this legal action began in November 2013, when the pipeline became blocked and [Appellee] experienced flooding in the basement of his home. At

_____

[1] At trial, Appellee testified that he purchased the residence as a potential future home for his elderly father. (See N.T. Trial, 10/24/16, at 8). He stated that he occasionally rented it out but that it was sitting vacant. (See id.).

that time, [Appellee] approached [Appellants] and requested access to their property so that the line could be repaired and [Appellants] refused. [Appellee's] home continued to flood due to his lack of access to repair the pipeline, and he proceeded to file a complaint in equity, seeking a preliminary injunction. In an order dated April 2, 2014, [the trial c]ourt granted [Appellee's] preliminary injunction and permitted him access to remove any blockage in the pipe and make necessary repairs.

Following the preliminary injunction, the parties were able to temporarily set aside their differences and came to an agreement to make the repairs. The parties equally shared the costs for materials and labor to install new piping, and once the repairs were completed, [Appellee] ceased to have any flooding in his basement. Although the repairs to the pipe were made and alleviated the flooding, [Appellants] complain that [Appellee] failed to fully uphold his end of the bargain. According to [Appellants], they agreed to the placement of the new pipe on their property providing that [Appellee] would remove a light post and fence so that a new lateral for future access could be located on [Appellee's] property. Although [Appellee] did not remove these items, [Appellants] claim that they proceeded nevertheless with the installation of the new pipe to comply with the [trial c]ourt's Order.

In May 2014, after the new pipe was installed, [Appellee] prepared a settlement agreement whereby [he] would have an easement running with the land with respect to the new pipeline along with the right of ingress and egress to and from [Appellants'] land for purposes of maintenance and repair. Under the proposed agreement, any rights of [Appellee] to the existing pipe that was no longer connected to the new pipeline would be terminated. [Appellants] have refused to sign the settlement agreement or any proposed amendments based on their stance that [Appellee] is not entitled to this relief.

(Trial Court Opinion, 2/21/17, at 1-3).

A bench trial took place on October 24, 2016. On February 21, 2017, the trial court issued an opinion and order in favor of Appellee. The court found that he was "entitled to an irrevocable license with respect to the

existing pipeline over [Appellants'] tract of land and shall have the right of ingress and egress to and from [Appellants'] land for the purpose of maintenance and repair to the pipeline as necessary." (Trial Court Order, 2/27/17, at 1).

On March 10, 2017, Appellants filed a post-trial motion. On March 31, 2017, the trial court issued an opinion and order denying Appellants' post-trial motion. On April 13, 2017, the court entered judgment in favor of Appellee. The instant, timely appeal followed. On April 21, 2017, the trial court directed Appellants to file a concise statement of errors complained of on appeal. See Pa.R.A.P. 1925(b). On May 10, 2017, Appellants filed a thirteen-issue Rule 1925(b) statement. See id. On June 15, 2017, the trial court issued an opinion. See Pa.R.A.P. 1925(a).

On appeal, Appellants raise the following issues for our review.

1. Whether the trial court erred in finding the existence of an irrevocable license when [Appellee] failed to produce clear and convincing evidence of detrimental reliance because [Appellee] admitted that he can eject water from his property via means other than the pipeline at issue, thereby allowing him to be restored to his original position[?]

2. Assuming arguendo that [Appellee] did prove the elements of an irrevocable license, [is Appellee] barred from equitable relief under the doctrine of unclean hands, as evidence of record shows that he knowingly utilized the pipeline at issue to illegal[ly] eject sewage and gray water into a nearby stream in violation of the laws of the Commonwealth[?]

(Appellants' Brief, at 4).

- 4 -

In an appeal from a trial court's verdict in a non-jury trial, our scope and standard of review is as follows.

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.
>
> Moreover, [t]he [trial] court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.

*Century Indemnity Co. v. OneBeacon Ins. Co.*, --- A.3d ---, 2017 WL 4639578, at *14 (Pa. Super. Filed Oct. 17, 2017) (citations and quotation marks omitted).

With respect to licenses, this Court has stated:

Licenses are often compared to easements. In general, a license is a mere personal or revocable privilege to perform an act or series of acts on the land of another, which conveys no interest or estate. A license is distinguishable from an easement because it is usually created orally, is revocable at the will of the licensor, and is automatically revoked by the sale of the burdened property. However, a license may become irrevocable under the rules of estoppel and in those circumstances it is similar to an easement.

> The Pennsylvania Supreme Court adopted the equitable doctrine of irrevocable license in the mid-nineteenth century stating that a license to do something on the licensor's land when followed by the expenditure of money on the faith of it, is irrevocable, and is to be treated as a binding contract. The Court subsequently explained that such a license,

> while not strictly an easement, is in the nature of one. It is really a permission or license, express or implied, to use the property of another in a particular manner, or for a particular purpose. Where this permission has led the party to whom it has been given, to treat his own property in a way in which he would not otherwise have treated it . . . it cannot be recalled to his detriment.
>
> Thus, the irrevocable license gives absolute rights, and protects the licensee in the enjoyment of those rights. Moreover, successors-in-title take subject to an irrevocable license if they had notice of the license before the purchase.

*Morning Call, Inc. v. Bell Atl.-Pennsylvania, Inc.*, 761 A.2d 139, 144 (Pa. Super. 2000) (citations, footnotes, and quotation marks omitted).

In their first issue, Appellants argue that the trial court erred in finding an irrevocable license because Appellee did not show clear and convincing evidence of detrimental reliance because he had an alternate method of ejecting storm water from his property. (See Appellants' Brief, at 14-22). However, Appellants have waived this claim.

In the instant matter, Appellants did not raise this issue in their post-trial motion, which only raised the issues that the trial court erred by not applying the correct legal standard; if the court had applied the correct standard, the evidence was insufficient to support the verdict; and that the doctrine of clean hands barred recovery. (See Motion for Post-Trial Relief, 3/10/17, at 2-3). It is settled that failure to raise an issue in a post-trial motion constitutes waiver of that issue on appeal. See *Keffer v. Bob Nolan's Auto Service, Inc.*, 59 A.3d 621, 650 (Pa. Super. 2012), appeal denied, 69

A.3d 602 (Pa. 2013) (citation omitted).[2][3]  Thus, Appellants have waived their first issue on appeal.

In their second issue, Appellants contend that Appellee "is barred from equitable relief" because he has unclean hands.  (Appellants' Brief, at 23).

_____

[2] Moreover, even if we were to review the merits of Appellants' first issue, our review of the record reveals ample support for the trial court's factual and legal finding that Appellee was entitled to an irrevocable license.  In its opinions of February 21, 2017, March 31, 2017, and June 17, 2017, the trial court thoroughly discusses its holdings which are supported by the record. (See Trial Ct. Op., 2/21/17, at 4) (finding that:  (1) license originated prior to construction of Appellants' home; (2) Appellee and his predecessors relied on license by making improvements to property and expending resources on repair and relocation of pipe; (3) finding credible Appellee's testimony that he was aware of existence of license prior to purchasing property; and (4) license was already established at time Bell purchased property and Bell was aware of its existence prior to his ownership); (see also Trial Court Opinion, 3/31/17, at 3-4) (finding that:  (1) Both Appellee and Bell were aware of existence of pipeline prior to purchasing property; (2) their testimony was credible; (3) Appellee is agreeable to putting in new septic system which would resolve part of drainage problem; and (3) system of ejecting storm water on to public roadway is temporary solution); (Trial Court Opinion, 6/17/17, at 2-3) ((1) finding credible testimony of Appellee and Bell that they were aware of pipeline's existence prior to purchasing property, made repairs to pipeline, and would be detrimentally affected if access ceased; and (2) Appellee cannot be restored to his original position absent access to pipeline).  Accordingly, had we reached the merits of Appellants' first issue, we would have affirmed.

[3] We note that we would be justified in finding that Appellants have not preserved any issues for our review because their thirteen-issue, vague and repetitive 1925(b) statement does not comply with Rule 1925(b)(4)(ii) and (iv).  See Kanter v. Epstein, 866 A.2d 394, 401 (Pa. Super. 2004), appeal denied, 880 A.2d 1239 (Pa. 2005), cert. denied, 546 U.S. 1092 (2006) (waiving prolix Rule 1925(b) statement where court determined that presentation of "outrageous number of issues" was deliberate attempt to circumvent purpose of Rule 1925); see also Jiricko v. Geico Ins. Co., 947 A.2d 206, 210 (Pa. Super. 2008), appeal denied, 958 A.2d 1048 (Pa. 2008).

Specifically, Appellants argue that Appellee has engaged in illegal conduct because the pipeline spills sewage and grey water in to a stream. (See id. at 23-26). We disagree.

Our Supreme Court has stated:

> [A] court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue. The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue.

Terraciano v. DOT, 753 A.2d 233, 237-38 (Pa. 2000) (citations omitted). Moreover, the burden of proving unclean hands is on Appellants. See Montgomery Bros., Inc. v. Montgomery, 112 A. 474, 475 (Pa. 1921).

Here, there is nothing in the record that shows that Appellee was guilty of any bad conduct, failed to act fairly, or acted fraudulently or deceitfully. The record demonstrates that the pipeline began as a drain onto property that Appellant, James D. Clawson's, father used as a leach field for his septic system, prior to Appellants building their home on the field. (See Answer and New Matter, 4/02/14, at unnumbered pages 2 and 4; N.T. Trial 10/24/16, at 59-60, 70-74, 76-78, 91-95, 106-07). Further, Appellants themselves helped construct the pipeline, despite their knowledge that it drained sewage into the stream. (See Answer and New Matter, supra at 2 and 4; see N.T. Trial, supra at 59-60, 70-74, 76-78, 91-95, 106-07). Appellants did not complain about this issue until they filed their answer and new matter in 2014.

Appellants failed to point to any evidence of record that shows that Appellee was aware that the pipeline caused raw sewage to drain into the stream prior to his ownership of the property; rather, the record reflects the opposite. (See, e.g., N.T. Trial, at 27, 102-03). The most the record establishes is that, when Appellant, James D. Clawson, and Appellee repaired the pipeline after the issuance of an injunction in this matter, they saw old sewage in it. (See id. at 86-87).

Moreover, as discussed supra the property in question is vacant and has been for the majority of Appellee's period of ownership. (See id. at 101). At trial, Spurgeon Shilling from the Indiana County Sewage Enforcement Agency testified that local authorities were aware of the situation and have no current issues with it. (See id. at 98, 101-03). Thus, Appellants have simply failed to meet their burden to prove that Appellee acted with unclean hands. See Terraciano, supra at 237-38; Montgomery Bros., supra at 475. Appellants' second issue is without merit.

Accordingly, for the reasons discussed above, we affirm the judgment.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2018

- 9 -